417 So.2d 1311 (1982)
Shirley McNAMARA, Secretary, Department of Revenue and Taxation, State of Louisiana, Plaintiff-Appellee,
v.
OILFIELD CONSTRUCTION COMPANY, INC., Defendant-Appellant.
No. 82-50.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1982.
Rehearing Denied August 30, 1982.
*1312 Young & Burson, I. Jackson Burson, Jr., Eunice, for defendant-appellant.
Riley Boudreaux, Jr., Baton Rouge, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
DOMENGEAUX, Judge.
This is a case arising under the revenue and taxation provisions of Title 47 of the *1313 Louisiana Revised Statutes. Plaintiff, Shirley McNamara, appearing in her official capacity as Secretary of the Department of Revenue and Taxation (hereinafter referred to as the State), filed suit against defendant Oilfield Construction Company, Inc., (hereinafter referred to as Oilfield), alleging that Oilfield failed to remit certain salesuse taxes due the State for the period of January 1, 1974, through October 31, 1977, in the amount of $56,767.61. Plaintiff also alleges that Oilfield owes, for the same period of time, $3,370.50, in occupational license taxes. Additionally, the State alleges that interest at the rate of seven (7%) percent per annum is due on all amounts. Oilfield reconvened seeking return of $119,420.75 in rental taxes which it alleges has been paid on the identical items on which the State claims salesuse taxes are due.
Oilfield is an oilfield service contractor engaged in the sale, rental, and repair of board roads. Its business also includes the preparation and cleanup of drill sites, and the leasing and/or sale of cattleguards, boards, and signs. Oilfield purchases substantial quantities of lumber, nails, cattleguards, and various other materials necessary in the construction of passageways to an oilwell drill site. It then enters into an initial ninety day lease agreement with a drilling company for the on-site construction of the board road which is used for ingress to and egress from the drill site. At the end of the initial ninety day lease period the lessee drilling company has the option to renew the rental of the board road for an additional ninety days, renewable at thirty day intervals. Upon expiration of the subsequent ninety day rental period, the lessee may keep the board road at no additional cost or may require its removal by Oilfield at Oilfield's cost.
Between January 1, 1974, and October 31, 1977, Oilfield's practice was to take a tax credit for salesuse taxes paid on items it purchased when remitting salesuse and rental taxes it collected to the State. The State in its suit alleges that the credits claimed were prohibited under the State's tax laws. Oilfield contrarily contends that the various credits are authorized and properly taken. The State further alleges that Oilfield owes an assessment for occupational license taxes for its retail sales and rental business. Oilfield argues that the retail sales and rental aspects of its business do not require it to obtain a separate occupational license inasmuch as its oilfield contractor's license encompasses these activities. The trial court found in favor of the State and against Oilfield, holding Oilfield liable for all taxes and interest allegedly due to the State except for salesuse taxes arising out of purchases from in state vendors and salesuse taxes of signs purchased for resale. Oilfield's reconventional demand was dismissed. From this judgment Oilfield appeals and the State has answered the appeal. The issues presented on appeal concern:
(1)(a) Whether or not the Department of Revenue and Taxation is required first to seek collection of salesuse taxes from the sellers before proceeding against the purchasers; and
(1)(b) Whether or not the State has carried its burden of proof that the taxes are still owing when its audit reveals that there was no separate accounting for taxes on the sales receipt representing the purchases that Oilfield made.
(2) Whether or not particular transactions of Oilfield are exempt from taxation;
(3) Whether or not the State may separate Oilfield's contractor's business into three separate occupations in order to collect three separate occupational license taxes; and
(4) Are the state laws as written constitutional?

ISSUE 1
The trial judge in reasons for judgment held:
"... in those instances where in-state taxable purchases have been made, it is the duty of the State first to seek collection from the seller, who, had he not collected from the purchaser, is entitled to recover from the latter all such sums under LSA, R.S. 47:304. It is also my *1314 opinion that in this case the plaintiff having been unable to show that the tax was unpaid although not separately billed, has failed in its burden of proof necessary for recovery of those alleged tax deficiencies from the defendant."
On appeal Oilfield contends that before proceeding against the purchaser for salesuse taxes allegedly due, the State must:
(1) First seek collection from the out of state vendor whose duty it is to collect said tax and;
(2) Prove that no tax for the items purchased has been remitted by the seller to the State.
In answer to Oilfield's appeal the State addresses the same issue, but claims that the same standard applies whether purchases are made from in state or out of state sellers. The State contends that regardless of whether the items purchased from in state or out of state vendors, it (the State) has the right to first proceed against the purchaser, if it so desires, for taxes due. Secondly, the State claims that no additional proof is needed establishing that a particular vendor or seller failed to remit sales use taxes collected, when an audit of vendee reveals that the salesuse taxes due on the items purchased were not paid.
We agree with the State and its contention that regardless of whether a seller is in state or out of state the right to proceed directly against the in state purchaser or user is the same. We have found no distinction under our law, nor has any been cited to us.
In Collector of Revenue v. J. L. Richardson Company, 247 So.2d 151 (La.App. 4th Cir. 1971); writ refused, 258 La. 915, 248 So.2d 586 (1971), the issue of the State's right to proceed directly against the purchaser was addressed as follows:
"... The question has been raised as to whether the State is precluded from assessing and collecting a sales tax against the purchaser when the dealer or seller could be held personally liable where he neglects, fails, or refuses to collect the tax. LSA-R.S. 47:304 provides:
`The tax levied in this Chapter shall be collected by the dealer from the purchaser or consumer, except as provided for the collection of the tax on motor vehicles in R.S. 47:303, as amended.
* * * * * *
Dealers shall, as far as practicable, add the amount of the tax imposed under this Chapter in conformity with the schedule or schedules to be prescribed by the collector pursuant to authority conferred herein, to the sale price or charge, which shall be a debt from the purchaser or consumer to the dealer, until paid, and shall be recoverable at law in the same manner as other debts. Any dealer who neglects, fails or refuses to collect the tax herein provided, shall be liable for and pay the tax himself.
* * * * * *
Any dealer who fails, neglects, or refuses to collect the tax herein provided, either by himself or through his agents or employees, shall, in addition to the penalty of being liable for and paying the tax himself, be fined not more than one hundred dollars, or imprisoned for not more than three months, or both.'
The provision placing the responsibility on the seller or dealer to collect the tax from the purchaser does not preclude the State from proceeding against the purchaser. The tax is due to the State at the time that the sale is consummated; and if the seller fails to collect this tax, the State has a right to proceed directly against the purchaser.
R.S. 47:306(A)(5) in reference to collection of sales tax due states:
`For the purpose of collecting and remitting to the state the tax imposed by this Chapter, the dealer is hereby declared to be the agent of the state.' (Emphasis added.)
If the dealer in collecting a sales tax from the purchaser is acting in its capacity *1315 as an agent for the State, it would seem logical to assume that the State as Principal should not be precluded from collecting the tax directly from the purchaser and not through its agent.
Additionally, LSA-R.S. 47:2(4) Subsection 4 in defining taxpayer states:
"`Taxpayer' means any person liable to pay a tax or file a return under any provision in which the word `taxpayer' appears, regardless of whether such person has paid any tax or filed the required return. (Emphasis added.)"
Thus, Oilfield as purchaser of goods, if found liable to pay the taxes, is by definition a taxpayer. Certainly the State may proceed directly against the taxpayer who owes back taxes. In view of these statutes, and in the absence of any express prohibition to the contrary, we find that the State has the right to proceed directly against the purchaser as an alternative remedy to that provided for in La.R.S. 47:304, supra, whether the vendor be in state or out of state.
Finally, we feel that the trial court erred in holding that the State did not prove the taxes were not paid by Oilfield's vendors, and therefore held that it (the State) could not proceed against Oilfield for recovery of the alleged tax deficiency. La. R.S. 47:304(F)(G) outline the procedures to be followed by sellers when collecting salesuse taxes from its purchasers. They provide in part as follows:
La.R.S. 47:304(F):
"No dealer shall advertise or hold out to the public, in any manner, directly or indirectly, that he will absorb all or part of the tax or that he will relieve the purchaser from the payment of all or any part of the tax ...."
La.R.S. 47:304(G):
"The dealer or seller is permitted and required to state and collect the tax separately from the price paid by the purchaser."
It appears obvious from even a cursory reading of these Articles that if a tax is collected by the dealer it must be stated separately (on the sales receipt) from the price paid by the purchaser. The dealer is not allowed to "absorb" any of the taxes himself. In view of the above, we feel that the State at least established a prima facie showing that the taxes due on such sales were not paid. Defendant, having introduced no evidence to controvert this prima facie showing, has not carried its burden of proof. Accordingly, we reverse that portion of the judgment below which denied the State's recovery of sales tax due on Oilfield's in state purchases.

ISSUE 2
Oilfield next contends that various purchases it made are exempt from taxation and therefore the tax credit taken was proper. Oilfield suggests that: (a) a board road, fence, and cattle guard are immovable either by destination or by nature, and as such are exempt from the rental tax imposed by La.R.S. 47:302(B); (b) the gates, fences, and lumber they purchased were purchased for resale, therefore La.R.S. 47:301(10) exempts these items from sales use taxes; (c) certain materials it purchased were used for further processing into tangible personal property for resale and therefore these materials are exempt from taxation under La.R.S. 47:301(10); (d) the sale of cattle guards and other miscellaneous items were "isolated or occasional" sales under La.R.S. 47:301(10) and exempt from taxation as not being retail sales as defined under the aforesaid statute; (e) installation charges are exempt from taxation under 47:301(3).
La.R.S. 47:302(B) provides:
"There is hereby levied a tax upon the lease or rental within this state of each item or article of tangible personal property, as defined herein; ..."
Defendant contends that the board roads, fences, and cattle guards it installs under its lease agreement are exempt from rental tax inasmuch as they are immovable either by nature or by destination.
Article 464 of the Louisiana Civil Code, before revised by Act No. 728 of the 1978 Regular Session of the Louisiana Legislature, defined an immovable by nature as follows:

*1316 "Lands and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature."
Immovability by nature has been characterized as a creation of the law based on practical consideration and on inherent characteristics of the things concerned. The question of whether a building or other construction is an immovable under pre-revised Article 464 is left for judicial determination according to prevailing notions in society. Two criteria that are often mentioned in decisions of the Courts are (1) some degree of integration or attachment to the soil, and (2) "some degree of permanency". Benoit v. Acadia Fuel & Oil Distributors, Inc., 315 So.2d 842 (La.App. 3rd Cir. 1975), writ refused 320 So.2d 550 (1975); Bailey v. Kruithoff, 280 So.2d 262 (La.App. 2nd Cir. 1973); Yiannopoulos, Louisiana Civil Law of Property, Sections 42, 43, 45, and 48; Civil Law Translations, Oubrey & Rau, Property, Section 164.
In LaFleur v. Foret, 213 So.2d 141 (La. App. 3rd Cir. 1968), this Court in discussing Article 464, made the following observations:
"We pretermit whether these structures are, technically, `buildings' instead of `other structures' under Art. 464. We think that, in either event, the test of immobilization must be whether, interpreted by objective manifestations, the outbuilding can be considered as intended to be permanently affixed to the soil.
Taking into consideration both the permanence (or not) of the placement or attachment of the outbuildings and also their actual physical mobility (or not), the trial court concluded that, under contemporary social attitudes, an objective observer could conclude that the larger structures, the two sheds, were intended by the owner to become permanently part of the premises, while the smaller and more mobile doghouses were not. The court accordingly classified the former as immovables by nature which (in the absence of contrary contractual provision) were conveyed to the purchaser with the sale of the soil; the latter as movables to which the seller retained title." (Footnotes omitted.)
We think that the evidence clearly establishes that the board roads, fences, and cattle guards were not placed with the intention of becoming "permanently" part of the premises. The very nature of the contract between defendant and his lessee bears this out. The board roads were constructed pursuant to a lease agreement which called for the removal of the road, fences, and cattle guards by defendant at the end of the lease period. The mineral lessees, who were under an obligation to restore the land surface back to its original condition, leased Oilfield's equipment and services only during the duration of drilling. At the end of the drilling operations Oilfield, by the terms of its leases, was required to remove the leased merchandise. If the board roads were leased for ninety days after the initial ninety day lease agreement terminated, the lessee had the option either to keep the road in place or require Oilfield to remove it. Terry Bills and Joel Guichard were accepted by the Court as drilling and production experts, and testified on behalf of Oilfield. According to them, speaking generally of the industry, it is a common practice to permanentize board roads in the basin or marshland areas after termination of the ninety day renewal lease. Hendrick Langley, Oilfield's co-owner, also testified and approximated that twenty percent of the board roads they placed are permanentized. Regardless, we feel that until a decision was made to "permanently" leave the road in place it did not become an immovable by nature. Besides, there was no showing what percentage, if any, of the board roads in question were actually permanentized during this period. Such being the case, the State is entitled to the rental tax on said roads.
Defendant also contends that the board roads, fences, and cattle guards are immovable by destination.
*1317 La.C.C. Article 468, which was in effect during the time in question,[1] provides:
"Things which the owner of a tract of land has placed upon it for its service and improvement are immovable by destination.
Thus the following things are immovable by destination when they have been placed by the owner for the service and improvement of a tract of land, to-wit:
Cattle intended for cultivation.
Implements of husbandry.
Seeds, plants, fodder, and manure.
Pigeons in a pigeon house.
Beehives.
Mills, kettles, alembics, vats, and other machinery made use of in carrying on the plantation works.
The utensils necessary for working cotton, and sawmills, taffia distilleries, sugar refineries and other manufactures.
All such movables as the owner has attached permanently to the tenement or to the building, are likewise immovable by destination."
Our jurisprudence is well settled that in order for a movable to become an immovable by destination it must be placed on the land by the landowner, not by its lessee. Richardson v. Item Co., 172 La. 421, 134 So. 380 (1931); Globe Automatic Sprinkler Co. v. Bell, 183 La. 937, 165 So. 150 (1935); LaFleur v. Foret, supra. In this case the board roads, fences, and cattle guards were put on the property by the mineral lessee and not the owner, consequently they cannot be considered immovable by designation.
In view of the above, we feel that the trial court correctly held that the board roads, fences and cattle guards were not immovables, therefore not exempt from the rental tax imposed by La.R.S. 47:302(B), supra.
Oilfield next claims that some of the materials it purchased to lease out as board roads, and their accessories, are exempt from salesuse taxes under La.R.S. 47:301(10), as purchases for resale; as materials purchased and used for further processing into articles of tangible personal property for resale; and, as isolated or occasional sales.
La.R.S. 47:301(10) provides in part:
"`Retail sale', or `sale at retail', means a sale to a consumer or to any other person for any purpose other than for resale in the form of tangible personal property, and shall mean and include all such transactions as the collector, upon investigation, finds to be in lieu of sales; provided that sales for resale must be made in strict compliance with the rules and regulations. Any dealer making a sale for resale, which is not in strict compliance with the rules and regulations, shall himself be liable for and pay the tax.
* * * * * *
The term `sale at retail' does not include sales of materials for further processing into articles of tangible personal property for sale at retail, nor does it include an isolated or occasional sale of tangible personal property by a person not engaged in such business."
Although ordinarily Oilfield would be allowed to take a credit for saleuse taxes paid by it on its purchases of items for resale, the trial judge found, and we agree, that the evidence established that the materials in question were stockpiled for use in its rental business, and since "they were not necessarily purchased for resale", the exception does not apply.
As we understand the aforesaid statute, in order for the "further processing" exception to apply, the materials must be further processed into tangible personal property for sale at retail. Since these materials were further processed into property for rental, we feel that Oilfield is not entitled to a credit under this provision.
*1318 The trial judge held that as a matter of fact the sale of certain items by defendant were not "isolated or occasional" sales. In his reasons for judgment he states:
"LSA-R.S. 47:301(10) excludes from sales taxes, `an isolated or occasional sale of tangible personal property by a person not engaged in such business.' In the course of its business, Oilfield Construction Co., Inc., sometimes sold signs, cattle guards, lumber, nails and aluminum gates to the Oilfield industry. Because these sales accounted for less than 1% of its gross revenue and averaged only approximately 2.5 per month, the defendant maintains that it is entitled to the exemption of the above-cited.
Considering the evidence, it is my conclusion that although these sales made up only a small part of the defendant's total revenues, they were nevertheless, a part of the defendant's regular business, and therefore, taxable."
There being ample evidence in the record to support the trial judge's conclusion, we find no error.
Finally, Oilfield suggests that no tax is due on installation charges and cites La.R.S. 47:301(3) which in pertinent part reads as follows:
"`Cost Price' means the actual cost of the articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor or service cost, transportation charges, or any other expenses whatsoever, or the reasonable market value of the tangible personal property at the time it becomes susceptible to the use tax, whichever is less.
* * * * * *
If the applicable labor charges are not separately stated on the invoice, it shall be presumed that the cost price is the total charge reflected on the invoice."
Although installation charges are not normally included as taxable services, they are taxable when included in the cost price unless separately billed and accounted for at the time of the installation. La.R.S. 47:301(3) supra. In this case, where defendant failed to separately account for the installation charges, plaintiff could properly assess taxes on the whole amount for which Oilfield invoiced its customers.

ISSUE 3
Oilfield proposes that its contractor's license covers the retail sales and rental aspects of its business. Oilfield contends that the State may not separate a contractor's business into three separate occupations in order to collect three occupational license tax charges.
La.R.S. 47:345[2] clearly provides that more than one license may be required of a single business if the classes are different and gross receipts exceed $5,000.00. The record supports the trial judge's conclusions that Oilfield was conducting business sufficient to justify a retail dealer's license under La.R.S. 47:353.1 and a rental license under La.R.S. 47:386 in addition to the license it had as contractor. In view of the above, we affirm the judgment of the district court in favor of the State for the imposition of the occupational license tax charges.

ISSUE 4
Finally, Oilfield challenges the constitutionality of our State tax statutes. We have reviewed the record along with the statutes in question, and we agree with the *1319 trial judge that these challenges are without merit.
For the above and foregoing reasons the judgment of the district court is reversed insofar as it denied plaintiff collection of sales tax credited by defendant for in state purchases of goods, and it is hereby Ordered, Adjudged, and Decreed that there be further judgment herein in favor of plaintiff, Shirley McNamara, Secretary, Department of Revenue and Taxation, State of Louisiana, and against defendant, Oilfield Construction Company, Inc., in the amount of $3,201.22, with interest as provided in La.R.S. 47:1601 from the date the taxes were due until paid. Costs on appeal are assessed against defendant, Oilfield Construction Company, Inc.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] La.C.C. Art. 468 was subsequently revised by Act No. 728 of the 1978 Regular Session of the Louisiana Legislature.
[2] La.R.S. 47:345 provides as follows:

"Except as otherwise expressly provided herein, any person taxed under this Chapter having one or more places of business shall pay a separate license for each class of business at each place.
A separate license for each class of business at each place of business shall not be required where any person has taxable annual gross sales and taxable annual gross receipts in an aggregate amount of less than five thousand dollars ($5,000.00), or has only taxable annual gross sales or taxable annual gross receipts in an amount of less than five thousand dollars ($5,000.00). Only one license shall be required for each place of business, which license shall be based upon the classification of business which constitutes the major portion of the taxable annual gross sales or taxable annual gross receipts."