433 So.2d 820 (1983)
TERREBONNE PARISH SALES AND USE TAX DEPARTMENT
v.
CALLAIS CABLEVISION, INC.
No. 82-CA-0538.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
Rehearing Denied July 11, 1983.
Edmund J. Connely, Houma, for plaintiff and appellee.
Edward D. Wegmann, New Orleans, Charles G. Blaize, Houma, for defendant and appellant.
*821 Before EDWARDS, WATKINS and SHORTESS, JJ.
EDWARDS, Judge.
Defendant, Callais Cablevision, Inc., appeals a district court judgment prohibiting it from conducting business in Terrebonne Parish until such time as it pays to the Terrebonne Parish Sales and Use Tax Department $12,644.54 in use tax, penalty and interest, plus ten percent attorney fees.
Defendant is in the business of supplying cable television services to municipalities in several parishes, including Lafourche and Terrebonne. Its principal office and warehouse are located in Golden Meadow, Louisiana, in Lafourche Parish. The Golden Meadow facility serves as receiving and distribution center for all of defendant's cable systems. Equipment is ordered and received at Golden Meadow, stored there, and then sent to a particular area when needed.
In the second half of 1981, three governmental bodies requested a sales and use tax audit of Callais' recordsthe Lafourche Parish School Board ("Lafourche Parish"), the Louisiana Department of Revenue and Taxation, and the Terrebonne Parish Sales and Use Tax Department ("Terrebonne Parish"). Callais agreed to cooperate in each audit, but requested that they be conducted one at a time.
Lafourche Parish conducted its audit first, in September of 1981. Callais objected to the results of that audit and a second audit was conducted in February of 1982. The auditor who conducted that second audit examined all invoices for property received by Callais during the period in question. All invoices which reflected delivery to Lafourche Parish were included in calculating the Lafourche Parish one percent use tax due. No effort was made to determine whether or not the property was eventually used in Lafourche Parish. The Lafourche Parish audit report was issued March 1, 1982, and indicated a use tax liability for the period January 1, 1978, to January 31, 1982. It claimed $15,281.65 in use tax due, $3,014.71 in interest and a $3,742.09 penalty, for a total of $22,038.45. Lafourche Parish agreed to waive the penalty and on March 30, 1982, Callais issued a check to Lafourche Parish for $18,449.18, representing the use tax due and interest thereon.
Following its audit, Terrebonne Parish issued an audit report on March 9, 1982. The audit covered the period from January, 1979, through February, 1982. The two percent Terrebonne use tax was calculated upon the value of all property which Callais had put to use in Terrebonne since it began business there in January of 1979. A majority of that property was received and stored by Callais at its warehouse in Lafourche Parish prior to being used in Terrebonne. Terrebonne's audit report claimed use tax due of $19,368.46, a penalty of $3,506.89 and interest of $2,413.74, for a total of $25,289.09.
On March 22, 1982, Callais responded by letter to the Terrebonne Parish audit report. The letter conceded that the use tax base was correct. However, Callais maintained that it was being assessed a one percent use tax by Lafourche Parish upon the same property which Terrebonne Parish sought to impose a two percent use tax. Callais sought a credit against the Terrebonne Parish two percent tax equal to the amount of the Lafourche Parish one percent tax assessment.[1] On March 26, 1982, Terrebonne Parish sent Callais a letter, indicating that it was denying Callais' request for a credit, based on its conclusion that the *822 Lafourche Parish tax was improperly applied to property which was used in Terrebonne Parish.
On April 2, 1982, Callais tendered to Terrebonne Parish a check in the amount of $12,644.55, representing one-half of the two percent use tax, penalty and interest assessed by Terrebonne Parish. Callais reiterated its claim that it was entitled to a credit for the remainder of the Terrebonne Parish tax because it had paid Lafourche Parish a one percent use tax on the same property.
On April 13, 1982, Terrebonne Parish filed suit against Callais, seeking to recover the $12,644.54 in use tax, penalty and interest which Callais had claimed as a credit.[2] Plaintiff's action utilized summary procedure as authorized by Section 9.02 of the Terrebonne Parish General Sales & Use Tax Rules and Regulations ("Terrebonne Regulations"). On plaintiff's motion, the trial court issued a rule for defendant to show cause why judgment should not be rendered prohibiting it from doing business in Terrebonne Parish until it paid the amount alleged to be due. Callais filed an answer, denying the allegations of plaintiff's petition. Additionally, defendant's answer pled the affirmative defense that it was entitled to a credit under Section 5.03 of the Terrebonne Regulations for all use tax paid to Lafourche Parish on the property taxed by Terrebonne.
The rule was heard on April 30, 1982. On July 7, 1982, the trial court rendered judgment in favor of plaintiff, prohibiting Callais from conducting business in Terrebonne Parish until such time as it pays to plaintiff use tax due in the amount of $12,644.54 plus ten percent attorney fees and all penalty and interest accruing after February, 1983. Additionally, the trial court ordered that each and every day that the order was disobeyed by defendant or its employees would constitute a separate act of contempt of court. The effective date of the order was the date of its signing, July 7, 1982.
The trial court's written reasons for judgment indicate that it based its judgment on a finding that defendant was not entitled to a credit for the use tax which it paid to Lafourche Parish because that tax was not legally owed. The court concluded that Lafourche Parish had no authority to impose a use tax upon material which was received in that parish and stored for eventual use in Terrebonne.
Defendant has suspensively appealed the district court judgment. It contends that the trial court erred in holding that the Lafourche Parish tax was not legally owed and in refusing to allow a credit for the Lafourche Parish tax which was paid on the same property taxed by Terrebonne Parish.
The credit provisions of the Terrebonne Regulations upon which defendant relies are found in Section 5.03. That section provides:
"Section 5.03. A credit against the use tax imposed by this resolution shall be granted to tax payers [sic] who have paid a similar tax upon the sale or use of the same tangible personal property in another City or Parish in the State of Louisiana, or City or County in a state other than Louisiana. The credit provided herein shall be granted only in the case where the City or Parish in the State of Louisiana, or the City or County in a state other than Louisiana to which a similar tax has been paid grants a similar credit as provided herein. The proof of payment of the similar tax to another City or Parish in the State of Louisiana, or to a City or County in a state other than Louisiana shall be made according to rules and regulations promulgated by the Director. In no event shall the credit be greater than the tax imposed by this Parish upon the paid [sic] tangible personal property which is the subject of the Terrebonne Parish use tax."
*823 The trial court held that Section 5.03 allows a credit only for payment of taxes which were legally due and owing. It reasoned that the use of the word "tax" implies that the obligation paid be one which is legally due and owing. Defendant challenges that ruling. It asserts that since the Lafourche Parish tax was paid under assessment by Lafourche Parish, it is entitled to a credit whether that assessment was correct or not. We disagree.
The trial court correctly held that Section 5.03 authorizes a credit only for a legally owed tax paid to another taxing authority. The interpretation urged by defendants would allow one taxing authority, by assessing taxes not authorized by law, to deprive another taxing authority of rightfully owed tax revenues. Section 5.03 of the Terrebonne Regulations should be construed to allow credit only for taxes paid which were legally due and owing. We therefore direct our attention to the issue of whether Lafourche Parish properly imposed a use tax upon the property in question.
The record does not reveal what percentage of the goods assessed by Terrebonne Parish was taxed by Lafourche Parish because they were stored there prior to use in Terrebonne Parish. Both parties agree that the percentage was large. The trial court found that:
"... most of the equipment that ultimately ended up in Terrebonne Parish was ordered from out of state, delivered to the defendant's warehouse in Lafourche Parish for storage, and then used in Terrebonne Parish."
The Lafourche Parish tax in question is imposed by Section 2.01 of the Lafourche Parish School Board Sales and Use Tax Rules and Regulations ("Lafourche Regulations"), which provides as follows:
"Section 2.01. There is hereby levied from and after June 1, 1965, for the purposes stated in the proposition set forth in the preamble to this ordinance, a tax upon the sale at retail, the use, the lease or rental, the consumption and the storage for use or consumption of tangible personal property and upon the sale of services within this Parish, as defined herein; ...."
"Use" is defined in Section 1.23 of the Lafourche Regulations as follows:
"Section 1.23. `Use' shall mean and include the exercise of any rights of power over tangible personal property incident to the ownership thereof, except that it shall not include the sale at retail of that property in the regular course of business."
Defendant contends that the definition of "use" includes the type of storage performed by Callais because that constitutes exercise of the right of ownership. We reject this reasoning and conclude that there is no statutory intent to include storage in the definition of "use." Section 2.01 of the Lafourche Regulations specifically enumerates "storage," along with "use," as a taxable event. If the regulations' definition of "use" had been intended to cover storage, such a separate enumeration would not have been made.
"Storage" is specifically defined in Section 1.19 of the Lafourche Regulations:
"Section 1.19. `Storage' shall mean and include any keeping or retention in this Parish of tangible personal property for use or consumption in this Parish or for any other purpose other than for sale at retail in the regular course of business."
This definition makes clear that the only type of storage taxable under the Lafourche Regulations is storage of property within Lafourche Parish for eventual use within the parish. Property which is merely stored in Lafourche Parish and eventually transferred to and used out of the parish is not subject to use tax under the Lafourche Regulations.
The conclusion that the Lafourche Regulations do not provide for taxation of property stored in Lafourche Parish for eventual use elsewhere is buttressed by Section 3.02 of those regulations. That section contains the following language:

*824 "Section 3.02. It is not the intention of this ordinance to levy a tax upon articles of tangible personal property imported into this Parish, or produced or manufactured in this Parish, for export; nor is it the intention of this ordinance to levy a tax on a bona fide transaction in interstate commerce. It is, however, the intention of this ordinance to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this Parish of tangible personal property after it has come to rest in this Parish and has become a part of the mass of property in this Parish." (Emphasis added.)
This language demonstrates that the Lafourche Regulations are only intended to tax the storage of property in Lafourche Parish when that property is destined for use or consumption within Lafourche Parish.
The trial court correctly concluded that defendant did not legally owe the Lafourche Parish use tax which it paid on the property put to use for the first time in Terrebonne Parish. The court also correctly concluded that Terrebonne Parish did not owe defendant a credit, under Section 2.03 of the Terrebonne Regulations, for the tax which defendant paid Lafourche Parish in error.[3]
For the foregoing reasons, the judgment of the district court is affirmed at defendant's cost.
AFFIRMED.
NOTES
[1] Section 5.03 of the Terrebonne Parish General Sales & Use Tax Rules and Regulations provides as follows:

"Section 5.03. A credit against the use tax imposed by this resolution shall be granted to tax payers [sic] who have paid a similar tax upon the sale or use of the same tangible personal property in another City or Parish in the State of Louisiana, or City or County in a state other than Louisiana. The credit provided herein shall be granted only in the case where the City or Parish in the State of Louisiana, or the City or County in a state other than Louisiana to which a similar tax has been paid grants a similar credit as provided herein."
The Lafourche Parish School Board Sales and Use Tax Rules and Regulations authorize a similar credit.
[2] This petition superseded a similar petition filed by Terrebonne Parish on January 12, 1982. The January 12 petition was based on Terrebonne's estimate of the use tax owed. After conducting its audit of Callais, Terrebonne Parish filed the second petition, which reflected the audit results and Callais' partial payment.
[3] As noted by the trial court, defendant had other options available to avoid having to pay tax twice on the same property. Callais could have paid under protest the tax assessed by both parishes, reserving its right to challenge the assessments. See Section 11.01 of the Terrebonne and Lafourche Regulations. Alternatively, Callais could have invoked a concursus proceeding by depositing the tax owed into the registry of the district court. See LSA-C.C.P. art. 4651 et seq. Instead, on March 30, 1982, Callais chose to pay the entire amount of the Lafourche Parish assessment, without protest, despite having been informed by letter of March 26, 1982, that Terrebonne Parish would not allow the requested credit.