735 So.2d 6 (1999)
LAFAYETTE PARISH SCHOOL BOARD, Plaintiff-Appellant,
v.
C&B SALES AND SERVICE, INC., Defendant-Appellee.
C&B Sales and Service, Inc. Plaintiff-Appellee,
v.
Lafayette Parish School Board, Defendant-Appellant.
Nos. 98-1096, 98-1097.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1999.
*8 James Michael Wooderson, Lafayette, for Lafayette Parish School Board.
William E. Logan, Jr., Lafayette, for C&B Sales & Service, Inc.
BEFORE: THIBODEAUX, AMY, and SULLIVAN, Judges.
THIBODEAUX, Judge.
In these consolidated cases, the Lafayette Parish School Board (hereinafter "LPSB") alleges the failure and/or delinquency of C&B Sales and Service, Inc. (hereinafter "C&B") in paying use taxes due the LPSB. C&B seeks a refund from the LPSB for taxes it allegedly overpaid. Following an interlocutory judgment stating the law to be applied in determining C&B's tax liability, the court appointed an expert to examine the numerous transactions at issue. The parties agreed to submit the matter on briefs. Accepting the report of the court-appointed expert as to the amount of taxes due, the trial judge rendered judgment in favor of C&B. The trial judge also found that the LPSB's claim for 1986 taxes had prescribed, and that the evidence was insufficient to support the LPSB's claim for penalties against C&B. The LPSB has instituted this appeal, alleging that the trial judge erred in (1) accepting the report of the court-appointed expert, (2) finding that an award of penalties is not supported by the evidence, (3) finding that the claim for 1986 taxes has prescribed, and (4) casting the LPSB with one-half the court costs. Based on the following reasons, we affirm.

I.

ISSUES
We shall consider:
1. whether the trial judge erred in accepting the report of the court-appointed expert;
2. whether the evidence is sufficient to support the LPSB's claim for penalties against C & B;
3. whether the LPSB's claim for 1986 taxes has prescribed; and,
4. whether the trial judge erred in casting the LPSB for one-half of the court costs.

II.

FACTS
C&B Sales and Service, Inc. is a Louisiana corporation with its main office in Lafayette Parish. C&B is the distributor and district representative for Gardner-Denver and other manufacturers. It maintains an inventory of compressor parts and equipment at its main assembly and repair shop in Broussard, Louisiana. C&B is divided into two divisions: a parts division and a compressor service division. The parts division purchases parts, equipment, and supplies for resale. The compressor division services compressors in the field which are used for the compression and transportation of natural gas or oil.
C&B leases and maintains compressors throughout Louisiana, Mississippi, Texas, and offshore. When C&B enters into a contract with an oil or gas company, the leasing company specifies its requirements and presents C&B with the location where the compressor unit is to be installed and maintained. Most of these sites are not in Lafayette Parish. C&B locates the compressor and arranges for a transportation company to deliver the equipment either to its Lafayette shop or to its customer's site.
The LPSB conducted an audit of C&B for the period of January, 1986 through December, 1989. On February 1, 1990, the LPSB assessed C&B $91,489.07 for use taxes, penalties, interest, and audit fees. On May 1, 1990, the LPSB brought suit against C&B for collection of the taxes assessed. C&B denied liability, arguing that goods purchased for resale and purchased for use and consumption outside of Lafayette Parish were not subject to a use tax in Lafayette Parish. However, it paid the assessment under protest and brought *9 suit against the LPSB for a refund. Subsequently, the cases were consolidated. The LPSB amended its assessment in February of 1991. On February 27, 1991, the LPSB levied an arbitrary assessment against C&B for the refusal of C&B to cooperate with an additional audit.
Prior to the trial on the merits, Judge Babineaux rendered an interlocutory judgment which stated the law to be applied in determining C&B's tax liability. Moreover, in his reasons for ruling, Judge Babineaux answered twelve certified questions posed by the LPSB. He stated that the answers "will allow the attorneys in this matter to `pigeon-hole' the various transactions for the purposes of determining the final amount of taxes due, if any."
Subsequently, the court sought to appoint an expert to examine the numerous transactions involved. Each party submitted a candidate for the appointment, and E.M. LeBlanc was appointed by the court. LeBlanc was ordered to refer to Judge Babineaux's reasons for ruling and the interlocutory judgment in reviewing the tax assessments. In this regard, the judgment provides:
IT IS FURTHER ORDERED that E.M. LeBlanc, Jr., refer to Judge Babineaux's Reasons for Ruling dated October 20, 1992 and his interlocutory Judgment of December 10, 1992 when and where applicable in reviewing the transactions on which a use tax was assessed and specify each transaction which is exempt from or not subject to a use tax by Lafayette Parish. It is understood that E.M. LeBlanc, Jr. shall not be restricted or limited in his review of the type of transactions which may be exempt or not subject to a use tax by Lafayette Parish.
On December 16, 1997, C&B filed an exception of prescription, contending that the LPSB's levy for 1986 taxes prescribed on December 31, 1989. Thereafter, the case was submitted on briefs to Judge Edward Rubin.[1] Judgment was rendered in favor of C&B, but ordering C&B to pay $24,314.56 together with interest, less a credit for the amounts paid under protest. In his reasons for ruling, Judge Rubin adopted the conclusions of LeBlanc as to the amount of taxes due, reasoning that LeBlanc's opinion was objective and credible. Moreover, the court sustained C&B's exception of prescription, and found that the evidence was insufficient to support the LPSB's claim for penalties. The LPSB appeals this judgment.

III.

LAW AND DISCUSSION

The Reports of E.M. LeBlanc and Gary Lambert
The LPSB contends that the trial judge erred in accepting the report of the court-appointed expert, E.M. LeBlanc, because LeBlanc did not follow the instructions of Judge Babineaux as stated in the December 10, 1992 interlocutory judgment. The LPSB emphasizes that in his deposition, LeBlanc indicated that he disagreed with Judge Babineaux's responses to some of the certified questions posed by the LPSB. Moreover, the LPSB contends that LeBlanc's opinion was tainted by self-interest due to his former accountant/client relationship with C&B. According to the LPSB, the trial judge should have accepted the report of Gary Lambert, the expert employed by the LPSB to conduct an independent review of the transactions.
C&B alleges that LeBlanc followed the instructions of the court in determining C&B's tax liability. C&B emphasizes that the judgment appointing LeBlanc as the court-appointed expert provides that Le-Blanc refer to Judge Babineaux's reasons for ruling and the interlocutory judgment "when and where applicable." Moreover, the court's instructions provide: "It is understood that E.M. LeBlanc, Jr. shall not be restricted or limited in his review of the *10 type of transactions which may be exempt or not subject to a use tax by Lafayette Parish[.]" Thus, C&B argues that Le-Blanc had authority to use his expertise to conduct a complete review of the evidence and to classify the transactions into their proper categories.
In response to the LPSB's contention that LeBlanc's opinion was tainted by self-interest, C&B argues that LeBlanc only represented C&B in a tax matter twenty-seven years ago. It alleges that this fact alone does not prove bias. Moreover, this fact was disclosed to the trial court, and the trial court rejected the argument.
C&B contends that the trial court did not err in accepting the report of LeBlanc instead of the report of Lambert. C&B alleges that Lambert failed to conduct a complete investigation as Lambert relied upon statements made by the LPSB's tax director rather than reviewing the record himself. Lambert admitted that he did not review the compressor rental logs or the monthly reports filed by C&B to the LPSB indicating the amount of taxes C&B paid. C&B argues that a review of the monthly reports is essential to determine if any tax is due to the LPSB and to determine if any credit for previous taxes should be given.
The trial court accepted the report submitted by LeBlanc. The court explained in its reasons for ruling:
After consideration of the law, review of the briefs of the attorneys, the depositions and report of the expert witnesses, the Court finds the report of E.M. LeBlanc, Jr., the court-appointed expert, to be the more objective and credible one and adopts his conclusions as to the amount of tax due as correct.
We find that the trial court's decision to adopt LeBlanc's report is not manifestly erroneous. "Where the testimony of expert witnesses differ, it is for the trier of fact to determine the most credible evidence and a finding of fact in this regard will not be overturned absent manifest error." Opelousas Prod. Credit Ass'n v. B.B. & H., Inc., 587 So.2d 812, 814 (La. App. 3 Cir.1991). In this case, the trial court found LeBlanc to be the more objective and credible expert and adopted his report as to the amount of taxes due.
The Lafayette Parish School Board Sales and Use Tax Ordinance (hereinafter "Lafayette Ordinance") imposes the tax in question. The relevant sections provide:
IMPOSITION OF TAX
Section 2.01. There is hereby levied from and after December 1, 1965, for the purposes stated in the proposition set forth in the preamble to this resolution, a tax upon the sale at retail, the use, the lease or rental, the consumption and storage for use or consumption of tangible personal property and on sales of services within this Parish, as defined herein;....
(emphasis added).
EXEMPTIONS AND EXCLUSIONS FROM TAX
Section 3.01. The taxes imposed by this resolution shall not apply to transactions involving the following tangible personal property:
. . . .
(14) The sale at retail of tangible personal property purchased within this Parish for use exclusively beyond the territorial limits of this Parish.
Section 3.02. It is not the intention of this ordinance to levy a tax upon articles of tangible personal property imported into this Parish, or produced or manufactured in this Parish, for export;.... It is, however, the intention of this ordinance to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this Parish of tangible personal property after it has come to rest in this Parish and has become a part of the mass of property in this Parish.
(emphasis added).
The LPSB alleges that the trial court erred in accepting LeBlanc's report as *11 LeBlanc disagreed with some of Judge Babineaux's responses to the certified questions posed by the LPSB. The interlocutory judgment of December 10, 1992 incorporated the certified questions and responses as part of the judgment. The first certified question and Judge Babineaux's response provide:
1. If goods, materials and/or supplies are picked up by C&B Sales & Service, Inc. from a Lafayette vendor or if they are delivered by a Lafayette vendor to C&B Sales and Service, Inc. at its Broussard location, assuming these items are not intended for resale, is this a taxable sales transaction?
Yes. See Potashnick Construction, Inc. v. Louisiana Department of Revenue & Taxation, 470 So.2d 526 (La.App. 1st Cir.1985).
In his deposition, LeBlanc provided the following response to the first certified question: "I'm saying [there are] instances in which it is taxable, and instances in which it is not taxable.... If it's used in Lafayette Parish, yes, it's taxable. If it's not used in Lafayette Parish, it is not taxable." The LPSB contends that as Le-Blanc was "contemptuous of the findings of the Court," his report should not have been accepted.
We find that the trial court did not err in accepting LeBlanc's report despite LeBlanc's partial disagreement with Judge Babineaux's answer to the first certified question. As previously stated, the court instructed LeBlanc that he was "not to be restricted or limited in his review of the type of transactions which may be exempt or not subject to a use tax by Lafayette Parish." LeBlanc's answer to the first certified question reflects a correct interpretation of the relevant statutes and jurisprudence.
In answering the first certified question, Judge Babineaux relied upon Potashnick. In this case, the court addressed whether a Missouri corporation's purchase of equipment was subject to state sales and use taxes under La.R.S. 47:302(A) and 47:321(A). The equipment in question was shipped from Illinois to the corporation's construction site in Louisiana. The court held that no taxes were due as "[t]he statute ... requires transfer of title or transfer of physical possession in this state, neither of which taxable incident took place in this case within the state of Louisiana." Potashnick, 470 So.2d at 529. As the court found that the transaction was not taxable, it did not consider the applicability of the exclusion contained in La.R.S. 47:305.10.[2] This exclusion is relevant because it is similar to Section 3.01(14) of the Lafayette Ordinance, one of the exclusions relied upon by C & B in arguing that certain transactions in question are not subject to taxation. Thus, Potashnick is not dispositive.
In Terrebonne Parish Sales & Use Tax Dept. v. Callais Cablevision, Inc., 433 So.2d 820 (La.App. 1 Cir.1983), the defendant operated a warehouse in Lafourche Parish that received and stored equipment which was delivered to and used in Terrebone Parish. The court affirmed a finding by the trial court that "Lafourche Parish had no authority to impose a use tax upon material which was received in that parish and stored for eventual use in Terrebone." Id. at 822. The provisions of the Lafourche Parish School Board Sales and Use Tax Rules and Regulations (hereinafter "Lafourche Regulations") at issue in Callais Cablevision are identical to the provisions at issue in this case. In Callais Cablevision, the court interpreted Section 3.02 of the Lafourche Regulations, which is identical to Section 3.02 of the Lafayette Ordinance, as follows:
The conclusion that the Lafourche Regulations do not provide for taxation of *12 property stored in Lafourche Parish for eventual use elsewhere is buttressed by Section 3.02 of those regulations....
This language demonstrates that the Lafourche Regulations are only intended to tax the storage of property in Lafourche Parish when that property is destined for use or consumption within Lafourche Parish.
Id. at 823-824.
Similarly, in Tigator, Inc. v. Police Jury of West Baton Rouge Parish, 94-1771 (La.App. 1 Cir. 5/5/95); 657 So.2d 221, writs denied, 95-2172, 95-2126 (La.11/17/95); 663 So.2d 712, the court held that use taxes were not due for the storage of tractors and trailers in West Baton Rouge Parish. In that case, a corporation used tractor-trailer rigs in interstate commerce which were initially delivered to West Baton Rouge Parish for preparatory work such as checking and stenciling truck numbers and company logos. The first dispatch of a trailer was from that parish. The taxing authorities argued that the trailers were subject to a use tax under parish ordinances which levied a tax "on tangible personal property when it is not sold but is used, consumed, distributed, or stored for the use or consumption" in the parish. Id. at 228. Rejecting this argument, the court explained:
The parish ordinances and LSA-R.S. 47:301(15) provide that the parish can tax only storage for use in the parish.... Accepting arguendo that the tractor-trailers are stored in the parish, they are not stored to be used or consumed in the parish, as required by the statute.... The use and storage of the tractors, trailers and their parts in West Baton Rouge Parish are not taxable.
Id. at 229-230 (citation omitted).
In light of the jurisprudence, we find that LeBlanc was justified in partially disagreeing with Judge Babineaux's response to the first certified question. Transactions which are covered by the relevant provisions of Sections 3.01 and 3.02 of the Lafayette Ordinance are exempt or excluded from the taxes imposed by Section 2.01.
The LPSB next alleges that LeBlanc's report should not have been accepted because LeBlanc testified that he disagreed with Judge Babineaux's responses to the seventh and tenth certified questions. The questions and Judge Babineaux's responses provide:
7. C&B Sales & Service, Inc. has used the concept of ultimate use, ultimate user, and ultimate consumption in a fashion that the School Board would suggest is incorrect, considering the cases of Trai[]gle vs. PPG Industries, Inc., 332 So.2d 777 (La.1976) and McNamara vs. Oilfield Construction Company, Inc., [417] So.2d 1311 (La.App. 3 Cir.1982), wherein there was a question of whether a product would be processed into another product for resale causing the ultimate consumer to pay the taxes. If C&B Sales & Services, Inc. parts which are incorporated into equipment owned or C&B purchases consumable supplies such as "fuel," are not those instances taxable sales at the point that C&B purchases from Lafayette vendors and either picks up or has delivered to C&B's location in Lafayette Parish?
Yes, considering the cases of Traigle v. PPG Industries, Inc., 332 So.2d 777 (La. 1976) and McNamara v. Oilfield Construction Company, Inc., 417 So.2d 1311 (La.App. 3 Cir.1982), [writ denied, 422 So.2d 157 (La.1982)], the concept as presented by C&B Sales and Service, Inc. concerning ultimate use, and ultimate user is incorrectly applied in these instances.
. . . .
10. Does the Court differentiate between the McNamara and Traigle cases, supra, and the case at hand with reference to ultimate use?
No.
In his report to the court, LeBlanc stated that he distinguished between the McNamara *13 and Traigle cases and the instant case. He explained:
C&B Sales did not consume the compressors it leased to various oil companies. It purchased or leased the equipment from outside Lafayette Parish and had them delivered on the installation site or its shop in Lafayette Parish where C&B modified them to meet requirements of its customer.... The compressors were not processed into any other product. They remained compressors.
We find that LeBlanc correctly interpreted the McNamara and Traigle cases, and appropriately distinguished those cases from the present case. In both McNamara and Traigle, the applicability of La.R.S. 47:301(10) was at issue. La. R.S. 47:302(A) levies a sales/use tax upon the sale at retail, use, consumption, distribution, or storage for use in consumption, of materials sold or used in Louisiana. La.R.S. 47:301(10) provides that the phrase "sale at retail" does not "include sale of materials for further processing into articles of tangible personal property for sale at retail."
In Traigle, the taxing authorities brought suit against a chlorine manufacturer for sales and use taxes allegedly due on graphite anodes purchased for use in the production of chlorine. The court held that graphite could not be regarded as having been purchased for processing into a finished article, and was therefore not exempt from state taxes pursuant to La. R.S. 47:301(10). Similarly, in McNamara, the taxpayer argued that lumber and other materials purchased for the construction of passageways to an oilwell drill site were exempt from sales and use taxes pursuant to La.R.S. 47:301(10). The court rejected this argument, explaining that the "further processing" exception only applies to materials that are further processed into tangible personal property for sale at retail. The present case is distinguishable from McNamara and Traigle as C & B does not allege that the "further processing" exception applies to the transactions in question. Rather, C&B alleges that the delivery of compressors and other parts to locations outside of Lafayette Parish for use and consumption exclusively beyond the territorial limits of Lafayette Parish is not subject to a use tax by Lafayette Parish.
In conclusion, we find that the trial judge did not err in accepting LeBlanc's report. As the court-appointed tax expert, LeBlanc conducted a complete review of the transactions in question. His final report to the court, along with his supplemental reports, detail the procedures he employed in his review and demonstrate his knowledge of the applicable law. The trial judge was not clearly wrong in finding that LeBlanc was the more objective and credible expert.

Penalties
The LPSB contends that the trial judge erred in declining to award penalties. Section 9.02 of the Lafayette Ordinance imposes penalties for the failure "to pay any tax due as provided in this ordinance." The record, in particular C&B's exhibit D-4, reflects that C&B filed monthly tax reports for the periods in question. C&B argues that it reported gross sales of $20,161,783.68, of which $17,596,138.69 was shipped outside of Lafayette Parish. Penalties cannot be assessed for the amount shipped outside of Lafayette Parish. As discussed previously, we agree with the finding of the trial court that LeBlanc correctly determined that such transactions are not subject to taxation by Lafayette Parish.
Moreover, although we agree with LeBlanc's finding that taxes are owed by C&B for those transactions where the proper invoicing procedures for claiming exemptions were not followed, we hold that the trial court did not err in finding that C&B does not owe penalties for these transactions. The penalty assessed on delinquent taxes may be waived. McNamara v. Stauffer Chem. Co., 506 So.2d 1252 (La.App. 1 Cir.), writs denied, 512 *14 So.2d 454, 455 (La.1987). In McNamara, the State filed suit in 1979 against Stauffer Chemical for sales taxes. During the pendency of the suit, the City of Baton Rouge and the East Baton Rouge Parish School Board asserted a claim for local sales taxes and penalties for the years 1976 through 1984. Although the court found that Stauffer Chemical owed taxes for the periods in question, it refused to award penalties. The court reasoned:
Considering the inordinate period during which the taxing authorities made no serious effort to collect the taxes involved, coupled with the uncertainty of the applicability of the laws to Stauffer's process, we agree with the trial court that the statutory and/or ordinance penalty for failure to voluntarily pay should not be assessed. Both justice and equity dictate nothing less.
Id. at 1259.
Likewise, in this case, a waiver of penalties is warranted considering the period of time which elapsed before the taxes in question were assessed to C&B. Moreover, we note that LeBlanc indicated in his report that had C&B followed the proper invoicing procedures, the exemption would have applied and the transactions would not have been taxable in Lafayette Parish.

Prescription
The LPSB contends that the trial judge erred in sustaining C&B's exception of prescription. The trial judge found that the LPSB's claim for 1986 taxes prescribed in December of 1989 pursuant to La.R.S. 33:2718.4(A), which provides: "Sales and use taxes levied by any political subdivision shall prescribe as of three years from the thirty-first day of December of the year in which such taxes became due."
However, citing La.R.S. 47:1574, the LPSB asserts that C&B did not timely plead the exception of prescription. It contends that in proceedings brought pursuant to La.R.S. 47:1574, courts have consistently held that all defenses must be presented prior to the time fixed for the original hearing. See e.g. St. John the Baptist Parish School Bd. v. Planters Bancshares, Inc., 449 So.2d 538 (La.App. 5 Cir.), writ denied, 450 So.2d 661 (La.1984). La.R.S. 47:1574 provides in relevant part:
In addition to any other procedure provided in this Sub-title or elsewhere in the laws of this state; and for the purpose of facilitating and expediting the determination and trial of all claims for taxes, penalties, interest, attorney fees, or other costs and charges arising under this Sub-title, there is hereby provided a summary proceeding for the hearing and determination of all claims by or on behalf of the state, or by or on behalf of the collector, for taxes, excises, and licenses and for the penalties, interest, attorney fees, costs or other charges due thereon, by preference in all courts, all as follows:
. . . .
(2) All defenses, whether by exception or to the merits, made or intended to be made to any such claim, must be presented at one time and filed in the court of original jurisdiction prior to the time fixed for the hearing, and no court shall consider any defense unless so presented and filed.
We hold that La.R.S. 47:1574 is inapplicable to this case. La.R.S. 47:1574, which has been made available to municipalities and other political subdivisions by La.R.S. 33:2841, is intended to facilitate in the collection of taxes by providing a speedy method for the determination and trial of all claims. City of New Orleans v. Davis Aviation, Inc., 235 La. 992, 106 So.2d 445 (La.1958). The first line of La. R.S. 47:1574 provides that the statute applies "[i]n addition to any other procedure provided in this Sub-title or elsewhere in the laws of this state ...." (emphasis added). The Louisiana Supreme Court has held that a plaintiff seeking to avail itself of this statute must indicate this intention in its pleadings. Davis Aviation, 106 *15 So.2d 445. In Davis Aviation, the City of New Orleans argued the taxpayer was precluded from introducing evidence in support of his defense because the taxpayer failed to comply with the pleading requirements of La.R.S. 47:1574. Finding that the proceeding was not governed by La. R.S. 47:1574, the court reasoned:
In the case at bar, the City of New Orleans did not indicate in its pleadings that it was proceeding under R.S. 47:1574.... Had counsel for the city contended at the time of the filing of the rule (as he thereafter contended in the Court of Appeal) that he was availing himself of the provisions of the more stringent statute, it was his duty to have so advised the judge and insisted upon compliance with the provisions thereof.
Davis Aviation, 106 So.2d at 447; see also St. John the Baptist Parish School Bd. v. Marbury-Pattillo Const. Co., 259 La. 1133, 254 So.2d 607 (La.1971) (noting that in filing a rule for taxes, the school board employed summary procedure pursuant to R.S. 47:1574).
Likewise, in this case, the LPSB did not indicate in its pleadings that it intended to proceed according to La.R.S. 47:1574. Rather, in its original petition, the LPSB stated:
That by virtue of Section 9.01 of the said Sales and Use Tax Ordinance, plaintiff is entitled to institute this summary proceeding for the determination of all claims for tax, interest, penalties, attorney's fees and costs due under the said Sales and Use Ordinance, and is entitled to rule against defendant, to show cause, why defendant should not be ordered to cease from further pursuit of business until such time as the said delinquent tax, interest, penalties, attorney's fees and costs have been paid.
The petition of the LPSB indicates an intent to proceed according to 9.01 of the Lafayette Ordinance; the LPSB does not cite La.R.S. 47:1574. As the petition did not provide C & B with notice that it would be held to the more stringent provisions of La.R.S. 47:1574, we find that the statute is inapplicable to this case.
The LPSB argues in the alternative that the trial judge erred in sustaining C&B's exception of prescription because prescription was interrupted. La.R.S. 33:2718.4(B) provides: "The prescriptive period running against any such sales and use tax shall be interrupted by any of the following:... (4) Filing of a false or fraudulent tax return." The LPSB contends there is a "great abundance" of proof that C&B filed false and fraudulent returns. C&B argues there is no evidence that it filed a false or fraudulent tax return.
We find that the evidence fails to establish that prescription was interrupted pursuant to La.R.S. 33:2718.4. In support of its argument that prescription was interrupted, the LPSB relies upon invoices which it alleges demonstrate "an intent to deceive and/or defraud." However, the LPSB's conclusory argument is unaccompanied by any reference to the record to support its claim. As the LPSB has not established that C&B filed a false or fraudulent tax return, we agree with C&B that the LPSB has failed to prove that prescription was interrupted. The trial judge did not err in sustaining C&B's exception of prescription.

Court Costs
The LPSB alleges that in casting one-half of the court costs to the LPSB, the trial judge violated La.R.S. 13:4521(A). This statute provides in relevant part:
Except as provided in R.S. 13:5112, R.S. 19:15 and 116, and R.S. 48:451.3, and as hereinafter provided, neither the state, nor any parish, municipality, nor other political subdivision, ... shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state, or any such parish, municipality, or other political subdivision,... in any court of this state or any municipality of this state....
*16 We find that the trial court did not err in casting one-half of the court costs to the LPSB as La.R.S. 13:4521(A) only exempts the state and its political subdivisions from the prepayment of court costs. Prejean v. Dixie Lloyds Ins. Co., 94-2979 (La.5/22/95); 655 So.2d 303, modified on other grounds on reh'g, 94-2979 (La.9/15/95); 660 So.2d 836. Because this exemption operates only as a temporary deferment from the payment of court costs, the trial court did not err in casting the LPSB with one-half of the court costs in its final judgment.
In brief to this court, C&B contends that it would be inequitable to include the cost of Lambert's deposition in the court costs. However, La.Code Civ.P. art. 2133(A) provides, in relevant part, as follows:
An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later.
In this case, C&B did not answer the appeal. An appellate brief or argument in an appellate brief does not satisfy the requirements of La.Code Civ.P. art. 2133. See Bond v. Allemand, 632 So.2d 326 (La.App. 1 Cir.1993), writ denied, 94-0718 (La.4/29/94); 637 So.2d 468. Thus, C&B's claim is not properly before this court and will not be considered.

IV.

CONCLUSION
Based on the foregoing reasons, the judgment of the trial court is affirmed. Court costs in the amount of $18,417.71 are assessed against the Lafayette Parish School Board. This amount represents one-half of the trial court costs plus all costs of appeal. Court costs in the amount of $13,765.50 are assessed against C&B which represent one-half of the trial court costs.
AFFIRMED.
AMY, J., CONCURS.
NOTES
[1] The case was transferred to Judge Rubin following Judge Babineaux's retirement.
[2] La.R.S. 47:305.10(A) provides: "There shall be no sales or use tax due upon the sale at retail or use of tangible personal property, including diesel fuel, purchased within or imported into Louisiana for first use exclusively beyond the territorial limits of Louisiana as specifically provided hereinafter in this Section."