332 So.2d 777 (1976)
Joseph N. TRAIGLE, Collector of Revenue, Department of Revenue, State of Louisiana, Plaintiff-Appellee-Relator,
v.
PPG INDUSTRIES, INC., Defendant-Appellant-Respondent.
No. 57224.
Supreme Court of Louisiana.
May 17, 1976.
Rehearing Denied June 18, 1976.
*779 Robert G. Pugh, Pugh & Nelson, Shreveport, for plaintiff-applicant.
William E. Shaddock, Scott J. Pias, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, for defendant-respondent.
TATE, Justice.
The issue concerns the liability of the defendant chemical manufacturer for Louisiana sales/use taxes upon some five million dollars worth of graphite blades bought by it and used for the production of chlorine. The state Collector of Revenue sues to collect some one hundred thousand dollars of taxes allegedly due upon the purchase of this graphite.
The courts below closely divided on the issue[1]. A majority of the intermediate court ultimately concluded that the graphite was not subject to taxation by reason of a statutory definition allegedly excluding it from sales tax. We granted certiorari because of the importance, in administering Louisiana's sales/use tax, of determining whether a chemical used as an electrode in the petro-chemical manufacturing industry is exempted from taxation because a trace of it is found as a waste residue in the ultimate chemical product.
As we will state more fully below, the precise issue of tax law relates to whether, under a tax definition, the graphite is used by the manufacturer as an ultimate consumer, as in the case of machinery or fuel (for which a sales/use tax is due when purchased by it); or whether, instead, the graphite is processed into the final product, so that the purchase of the latter, as the ultimate consumer, pays the tax (not the manufacturer). Before centering on this precise issue of tax law, however, we deem it advisable to state its factual context.

Factual Context
Chlorine is produced from salt water brine by an electrolytic processi.e., the passage of electricity through a substance (the electrolyte) from a positive electrode or terminal (the anode) to a negative electrode or terminal (the cathode). In the present case, the electric current is passed through a salt water brine (the electrolyte) from the anode (the graphite blades here sought to be taxed, embedded in lead) to a cathode (a perforated steel screen, covered with asbestos). The passage of the electric current through the salt water brine breaks the salt water down into chlorine, hydrogen, and caustic soda, all saleable products.
In the process, the graphite (carbon) blades of the anode and the asbestos of the cathode become unusable and must be replaced. The carbon anodes last about six months, and the asbestos diaphragms last about 150 days. (The steel and lead do *780 not appreciably deteriorate through their use in the process.)
The taxpayer no longer contends that the asbestos is exempt from taxation. However, essentially because a residue of the carbon (graphite) is found within the final chlorine product, the taxpayer claims that (all) the graphite is non-taxable material, as included within the manufactured product; rather than being a taxable material used by the manufacturer, as the ultimate consumer, during its production of the ultimate article sold by it to the consumer.
In the electrolytic process, the chlorine (a pure element) escapes as a gas. Mingled with it is a small residue of carbon monoxide and carbon dioxide, about 1 ½ to 2% of the total volume.[2] This residue results from the combination of carbon (graphite) atoms from the anode with loose oxygen atoms in the salt water. As all previous courts found, the oxides of carbon present in the chlorine are useless waste material (impurities) which would be removed, except that it is not economically feasible to do so.

The Legal Issue
The Louisiana sales/use tax is a tax upon the sale at retail, use, consumption, distribution, or storage for use in consumption, of materials sold or used in Louisiana. La.R.S. 47:302(A). It is measured by the sales price if the item is sold at retail, or upon the cost price when not sold at retail but rather used, consumed, or stored for use or consumption. La.R.S. 47:302(A).
Pertinently to the present issue, La.R.S. 47:301(10) defines "sale at retail" as: "* * * A sale to a consumer or to any other person for any purpose other than for resale in the form of tangible personal property. . . . The term `sale at retail' does not include sales of materials for further processing into articles of tangible personal property for sale at retail * * *"[3]
We should here note that, in the light of this precise definition and of the general purpose of the tax statute to impose the sales/use tax upon the transaction by which the ultimate consumer receives the particular item, the more reasonable interpretation in this instance is that the taxpayer manufacturer is liable for tax upon the graphite anodes: They were not purchased by the taxpayer for the "purpose" of "resale in the form of tangible personal property", but rather for the purpose of using them as a part of the manufacturing process (like the machinery or fuel) in order to produce the chlorine for purposes of resale of the chlorine to an ultimate consumer.

Taxpayer's Contention
The taxpayer points out, however, that traces of the carbon (but about 60% of the original anodes) are found in the bulk containers which contain the final chlorine product. Thus, they view the carbon as purchased for further processing "into" the chlorine manufactured for sale at retail.
*781 Therefore, relying upon the principle that tax statutes should be liberally construed in favor of the taxpayer, the defendant argues that we should adhere to the interpretation by the majority of the court of appeal, namely: Since the carbon (although consumed) is in residue partly included within the final product's bulk, it was purchased for "further processing into" the chlorine, which (in combination with the carbon oxide residues) was the product produced for sale at retail.
The taxpayer's contention is tenable. The literal wording of the definition in the last sentence of La.R.S. 47:301(10) (quoted in full, footnote 3), upon which the taxpayer relies, permits this interpretation namely that, if the substance used in the manufacture enters into the final article produced for resale (however unintended or useless or minutely), the substance can be regarded as purchased for "processing into" the article produced for sale; and thus as taxable, not to the manufacturer who used the substance, but to the purchaser at retail as the ultimate consumer.

Conclusion
Nevertheless, viewing the definition of La.R.S. 47:301(10) as a whole, the better or more reasonable interpretation, we believe, is that the substance cannot be regarded as purchased for processing "into" the finished article (and, thus, as non-taxable to the manufacturer), when in fact the "purpose" for which it is bought is not for incorporation "into" the manufactured product but rather only to be used in the process of producing the manufactured product for saleat least where, as here, the inclusion of the waste residue of the substance results from an unintended (although unavoidable) inefficiency of the manufacturing process, is of no benefit to the product sold, and is of the nature of an impurity rather than of an integral part of the finished product.
And, if we were in doubt and regarded the statutory definition as ambiguous (we do not), we would find of persuasive aid the administrative construction given to the statute since soon (1949) after its enactment in present form in 1948 and all during the taxable years (1968-1972) in question. By this contemporaneous construction through the years, as is essentially uncontested, the graphite used in the manufacturing process was not regarded as non-taxable to the manufacturer, nor as purchased for incorporation into the finished product, for the reason that the small carbon residue found in the ultimate product was not "a recognizable, integral part" of it.[4]
"Integral" is defined as "of, relating to, or serving to form the whole: essential to completeness: organically joined or linked * * *". Webster's Third New International Dictionary, verbo "Integral", p. 1173 (1961). The waste carbon oxides, chemically distinct from and inessential to the chlorine produced, forming no part of it organically, do not fall within this definition.
*782 No economically feasible methods permits removal of the minute carbon oxide gas residue from the bulk containers in which the chlorine gas is sold. However, these oxides are waste materials in the chemical reaction, the purpose of which was to produce chlorine (not carbon oxides) for sale at retail.
In the terms of statutory language, La. R.S. 47:301(10), the carbon (graphite) anodes were not purchased for the "purpose" of "resale in the form of tangible personal property"; nor were they sold to the manufacturer for "further processing into" the article (chlorine) produced for sale (an article of which they were not a chemical or component part, but rather a foreign substance uncombined with the chlorine which was manufactured for sale at retail).
As the taxpayer notes, an administrative construction cannot have weight where it is contrary to or inconsistent with the statute. However, where the statute is ambiguous (as, most favorably to the taxpayer, this statutory definition may be), a long settled contemporaneous construction by those charged with administering the statute is given substantial and often decisive weight in its interpretation. Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958); Esso Standard Oil Co. v. Crescent River Port P. Assn., 235 La. 937, 106 So.2d 316 (1958); and decisions therein cited. See also: Tennessee Gas Transmission Co. v. Violet Trapping Co., 248 La. 49, 176 So.2d 425 (1965); 3 Sutherland, Statutory Construction, Section 66.04 (4th (Sands) ed., 1974).
This is especially so where, as here, the administrative construction has consistently been followed since adoption of the statute over twenty years ago. In the absence of legislative amendment during that long period, the administrative construction may reasonably be presumed to be in accord with the legislative intent; it also being a reasonable meaning of the legislative language in the light of the legislative purpose evidenced by the statute as a whole.
Other principles of statutory construction are also urged as applicable, such as: Where there is reasonable doubt as to the meaning of a tax statute, the doubt is ordinarily resolved, in the absence of other guide to the legislative intent, in favor of the taxpayer. See United Gas Corporation v. Fontenot, 241 La. 564, 129 So.2d 776 (1961); 3 Sutherland, Statutory Construction, Section 66.01 (4th (Sands) ed., 1974). Too, it is suggested that, in the present case, this principle is qualified by the further principle that claims of exemption from a tax otherwise to apply are strictly construed against the person claiming the exemption. See Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1959) and decisions therein cited; 3 Sutherland, Statutory Construction, Section 66.09 (4th (Sands) ed. 1974).
Nevertheless, the aim of all of these principles of interpretation is to ascertain the legislative intent as to the question at issue. For reasons earlier stated, we find the most reasonable construction of the statute, in the light of its wording and the legislative purpose evidenced by the statute as a whole, to be that the graphite used as an anode in the processing of the chlorine was not sold to the taxpayer for the purpose of resale, nor for processing into the chlorine sold. It was therefore taxable to the manufacturer, as the graphite's ultimate consumer.
Further, even if the statute be regarded as ambiguous, the best guide to its meaning in the present case is the accepted contemporaneous administrative construction given to the statute for over two decades by the agency charged with administering it, rather than deductions based upon other general interpretative principles less clearly indicative in the present case of the legislative intent. Until 1968, the present taxpayer itself, along with all other manufacturers in the petrochemical field, accepted this interpretation. If the legislature had *783 intended to exempt from taxation some thirty-five million dollars of process chemicals annually used in our petrochemical industries which do not form a component part of the final product, it is reasonable to assume that the legislature would have amended the statute so as not to permit such administrative construction; which, instead, has not until this case been questioned legislatively or judicially.
The defendant taxpayer alleges that, to permit the tax on the graphite, is to permit double taxation, since a sales tax is collected on the chlorine from its ultimate purchaser. The contention overlooks the statutory scheme of taxing the ultimate consumer of the particular product purchased, in this case the manufacturer. The purchaser of the chlorine (who pays the sales tax thereupon, as its ultimate consumer) is no more the ultimate purchaser of the graphite anodes used up in the present electrolytic manufacturing process than he is of the lead components of the anode, or the steel cathodes and the used-up asbestos diaphragms which are components thereof, or the machinery used in the manufacture of the chlorineall of which are likewise taxable to the manufacturer, as their ultimate consumer.

Decree
For the reasons assigned, we find that the defendant manufacturer is liable for the sales/use tax upon the graphite anodes purchased by it for use in the manufacture of chlorine. Accordingly, we reverse the judgment of the court of appeal (which held these purchases non-taxable), and we reinstate and affirm the judgment of the district court in favor of the plaintiff Collector and holding the defendant manufacturer liable for such taxes, interest, attorney's fees, and costs. All costs of these proceedings are taxed against the defendant.
COURT OF APPEAL JUDGMENT REVERSED; DISTRICT COURT JUDGMENT REINSTATED AND AFFIRMED.
DIXON, J., concurs.
MARCUS, J., concurs in part, dissents in part and assigns written reasons.
SUMMERS, J., dissents for the reasons assigned by the Court of Appeal. See 321 So.2d 541.
MARCUS, Justice (concurring in part and dissenting in part).
La.R.S. 47:301(10) exempts from imposition of the sales/use tax the "sales of materials for further processing into articles of tangible personal property for sale at retail . . . ." As the majority and both courts below found, approximately 60% of the graphite purchased by PPG is processed into the product stream and thus forms a part of the manufactured product that is afterwards sold at retail. About 40% of the graphite is not processed into the product but rather is discarded by the manufacturer as an industrial waste. In my view, therefore, the collector may assess the taxpayer with the sales/use tax on only 40% of the price that it pays for the graphite (representing that portion of the graphite that is not incorporated into the manufactured product).
In effectively adopting the collector's position that the graphite must be of some benefit to the final product if the exemption is to apply, the majority has endorsed an administrative regulation that is in conflict with law and has also disregarded the well-established rule of statutory construction that in doubtful cases tax statutes are construed in favor of the taxpayer.
Accordingly, I respectfully concur in part and dissent in part.
NOTES
[1] The district court ruled that the taxes were due on the graphite. The Court of Appeal, Third Circuit, reversed the trial judge's decision, one judge dissenting. 315 So.2d 859 (La.App. 3rd Cir., 1975). That court denied the collector's application for a rehearing. Exercising its supervisory jurisdiction, this court held that the collector was entitled to re-argument under Art. 5, Sec. 8, Constitution, 1974 before a five judge panel. 317 So.2d 625 (La.1975). After re-argument that panel re-affirmed the original opinion, with two judges dissenting. 321 So.2d 541 (La.App. 3rd Cir., 1975). We granted writs, 325 So.2d 269 (La.1976), to review the Court of Appeal decision exempting the graphite from the sales/use tax.
[2] About 60% of graphite is included in this escaping residue. The other 40% residue is left in stubs of the blades and in a carbon residue at the bottom of the tank; both of which are industrial wastes and are discarded as of no value.
[3] La.R.S. 47:301(10) in full provides:

"`Retail sale,' or `sale at retail,' means a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property, and shall mean and include all such transactions as the collector, upon investigation, finds to be in lieu of sales; provided that sales for resale must be made in strict compliance with the rules and regulations. Any dealer making a sale for resale, which is not in strict compliance with the rules and regulations shall himself be liable for and pay the tax.
"The term `sale at retail' does not include sales of materials for further processing into articles of tangible personal property for sale at retail, nor does it include an isolated or occasional sale of tangible personal property by a person not engaged in such business."
[4] Article 2-37 (as numbered in the 1961 edition) of the rules and regulations of the department of revenue for administration of the Louisiana General Sales Tax provided:" "Sales to manufacturers and producers. The gross receipts of gross proceeds derived from sales of raw materials to manufacturers to be used in fabricating or producing finished articles of tangible personal property for resale and which becomes a recognizable, integral part of such finished articles, are not subject to the tax imposed under the sales tax act. The proceeds derived from subsequent sales of such finished articles of tangible personal property to consumers or users are subject to the tax."

By a 1973 amendment, after the taxable period, the department added a further clarification that the included substance must be of some benefit to the final product. While we agree with the taxpayer that this later administrative construction cannot be given weight as an additional requirement, we also agree with the trial court that the 1973-added explanation of beneficial effect was reasonably implied by the earlier requirement that, to be non-taxable, the substance must be an integral part of the finished article.