CYNTHIA BRIDGES, SEC., DEPT. OF REV., STATE OF LOUISIANA

VERSUS

NELSON INDUSTRIAL STEAM CO.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2010-5853
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**********

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.

**CONERY, J., dissents and assigns reasons.**

                                                            **AFFIRMED.**

H. Alan McCall
Stockwell, Sievert, Viccellio, Clements & Shaddock
Post Office Box 2900
Lake Charles, Louisiana 70602
Telephone: (337) 436-9491
COUNSEL FOR:
    Defendant/Appellant - Nelson Industrial Steam Co.

Christopher J. Dicharry
Linda S. Akchin
Kean Miller LLP
400 Convention Street - Suite 700
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
COUNSEL FOR:
    Defendant/Appellant - Nelson Industrial Steam Co.

**Russell J. Stutes, Jr.**
**Stutes & Lavergne, LLC**
**600 Broad Street**
**Lake Charles, Louisiana 70601**
**Telephone:  (337) 433-0022**
**COUNSEL FOR:**
   **Plaintiffs/Appellees - Cynthia Bridges, Sec., Dept. of Rev., State of Louisiana; Calcasieu Parish School System Sales & Use Tax Dept., and John Collins, Tax Administrator**

**Cheryl M. Kornick**
**Liskow & Lewis**
**One Shell Square**
**701 Poydras Street - Suite 5000**
**New Orleans, Louisiana 70139-5009**
**Telephone:  (504) 581-7979**
   **BRIEF OF *AMICUS CURIAE* - Louisiana Chemical Association**

**THIBODEAUX, Chief Judge.**

For the reasons discussed in the consolidated case of *Cynthia Bridges, Sec., Dept. Of Rev., State Of Louisiana v. Nelson Industrial Steam Co.*, 14-1250 (La.App. 3 Cir. __/__/15), ___ So.3d ___, the judgment of the trial court is affirmed. Costs of this appeal are assessed against NISCO.

**AFFIRMED**.

No. 14-1250, (c/w) No. 14-1251, (c/w) No. 14-1252, (c/w) No. 14-1253

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA


No. 14-1250; Cynthia Bridges, Sec. Dept. of Rev., State of Louisiana v. Nelson
Industrial Steam Co.

(c/w)

No. 14-1251; Nelson Industrial Steam Co. v. Calcasieu Parish School System Sales
and Use Tax Dept., et al.

(c/w)

No. 14-1252; Cynthia Bridges, Sec. Dept. of Rev., State of Louisiana v. Nelson
Industrial Steam Co.

(c/w)

No. 14-1253; Nelson Industrial Steam Co. v. Calcasieu Parish School System Sales
and Use Tax Dept., et al.


CONERY, J., dissenting.

The central issue in these four consolidated cases is whether NISCO's purchase of limestone used in its manufacture of electricity, steam, and ash should be **excluded** from sales tax pursuant to La.R.S. 47:301(10)(c)(i)(aa), expressly referred to by the supreme court as the "further processing **exclusion**." *Int'l Paper Inc. v. Bridges*, 07-1151 (La. 1/16/08), 972 So.2d 1121, 1128. The statute at issue providing for the **exclusion** states, "The term 'sale at retail' **does not include sale of materials for further processing into articles of tangible personal property for sale at retail**." La.R.S. 47:301(10)(c)(i)(aa) (emphasis added). Because a tax **exclusion** is at issue, the statute must be liberally construed in favor of the taxpayer and against the State (LDR) and Parish (CPSS), herein collectively referred textually as "Tax Collectors." *Harrah's Bossier City Inv. Co., LLC v. Bridges*, 09-

1916 (La.5/11/10), 41 So.3d 438. The trial court and majority incorrectly interpreted the law as though the **exclusion** in question was a tax exemption and construed the "exemption" narrowly in favor of the Tax Collectors. I submit their decisions were wrong as a matter of law and respectfully dissent.

For many years prior to the audits at issue, the Tax Collectors treated limestone used in NISCO's manufacturing process to reduce sulfur emissions in the production of electricity, steam, and ash as a raw material subject to the further processing exclusion, thus excluding NISCO's purchase of limestone from sales tax. The CFB technology employed by NISCO in its manufacture of electricity, steam, and ash required the use of limestone and was contemplated by NISCO from the inception of its April 28, 1988 partnership agreement for production of those products. NISCO's facility was converted from natural gas to the CFB technology it now uses in 1992, as originally planned. That technology incorporates the use of petcoke as opposed to natural gas as fuel for the boilers used in the process. As correctly noted by the majority, limestone is required to reduce the emissions of sulfur from the petcoke burned in the boilers as fuel, and in the process, the limestone is simultaneously processed into an ash. The ash is the result of a combination of the carbon and oxygen from the limestone and the sulfur from the petcoke, which results in a mixture of calcium oxide and calcium sulfate ash. There is a ready market for the ash, one of the products to be sold as planned from the beginning. Neither the CFB technology, nor the law applicable to the further processing exclusion, La.R.S. 47:301(10)(c)(i)(aa), has changed since 1992. What did change was the decision by the Tax Collectors in this case to tax the limestone used in the manufacturing process beginning with audits dating back to the tax year 2005.

2

The trial court in its judgment, and cryptic reasons for ruling, affirmed by the majority, found, "It is also undisputed that limestone in any form, or its component parts, is not found in the steam and electricity produced" by NISCO. The trial court further stated, "Just because the ash is an incidental byproduct of the [CFB] process, its production, even in combination with the production of steam and electricity, does not in and of itself permit NISCO to claim the benefit of the further processing tax exclusion on its purchase of limestone."

Respectfully, the trial court and majority misconstrued the law applicable to a tax **exclusion** in this case. In affirming, the majority states, "Here, NISCO seeks to be **exempt** from paying sales taxes on its $46 million purchase of sand and limestone[.]" To the contrary, it is the Tax Collectors who are bringing this suit and the Tax Collectors who must bear the burden of establishing that the raw materials used in NISCO's manufacturing process are not subject to the tax **exclusion** provided by the legislative act in question. This case, essentially, is about statutory construction.

The trial court and the majority have determined that since the ash, one of the three products produced in the manufacturing process and sold by NISCO, is not the **primary product** sold by NISCO, and is not as economically profitable as electricity and steam, then the limestone purchased by NISCO and required to be used in its process is not subject to the further processing exclusion and is subject to sales tax. The undisputed record, however, supports NISCO's argument that NISCO always contemplated sale of the ash as one of the products produced for resale, along with electricity and steam, and continued to develop its market for its ash product. Since 1996 through today, NISCO has sold 100% of its ash output to LA Ash. According to the record, it is estimated that NISCO sells approximately

3

600-800 pounds of ash daily and some 200,000 to 250,000 tons annually. Ash is clearly more than just a "by product" of NISCO's manufacturing process. It is especially clear, and not subject to dispute, that ash is one of the product**s,** plural, produced for resale in the manufacturing process, though admittedly, not the **primary** or most profitable product.

### *Statutory Interpretation*

In *McLane Southern, Inc.*, 11-1141, pp. 5-7 (La. 1/24/12), 84 So.3d 479, 483, the Louisiana Supreme Court succinctly stated the requirements for the judicial interpretation of statutes:

> "It is a fundamental principle of statutory interpretation that when a 'law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied a written, and no further interpretation may be made in search of the intent of the legislature.'" *Harrah's Bossier City Inv. Co., LLC v. Bridges*, 09-1916 (La.5/11/10), 41 So.3d 438, 446-447 (citing La. C.C. art. 9). This principle applies to tax statutes. *Cleco Evangeline, LLC v. Louisiana Tax Com'n*, 01-2162 (La.4/3/02), 813 So.2d 351, 354; *Tarver v. E.I. Du Pont De Nemours and Co.*, 93-1005 (La.3/24/94), 634 So.2d 356, 358. When the law is not clear and unambiguous or its application leads to absurd consequences, we must rely on the secondary rules of statutory interpretation to discern the meaning of the statutes at issue. *Id.* The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the Legislature to enact the law. *Pumphrey v. City of New Orleans,* 05-0979 (La.4/4/06), 925 So.2d 1202, 1210 (citing *In re Succession of Boyter*, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128). The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. *Id.; Stogner v. Stogner*, 98-3044 (La.7/7/99), 739 So.2d 762, 766.
>
> The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it. *Pumphrey, supra* at 1210 (citing *Boyter, supra* at 1129; *Stogner, supra* at 766). The statute must, therefore, be applied and interpreted in a manner, which is consistent with logic and the presumed fair purpose and intention of the Legislature in passing it. *Id.* (Citing *Boyter, supra* at 1129.) This is because the rules of statutory construction require that the general

4

intent and purpose of the Legislature in enacting the law must, if possible, be given effect. *Id.* Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. *Id.* It is likewise presumed that the intention of the legislative branch is to achieve a consistent body of law. *Id.* (Citing *Stogner*, *supra* at 766).

Tax exclusions are to be liberally construed in favor of the taxpayer and strictly construed against the taxing authority. In *Harrah's*, the supreme court explained the difference between a tax exemption and a tax exclusion as follows:

> According to the leading Louisiana sales tax treatise, a "tax exemption is a provision that exempts from tax a transaction that would, in the absence of the exemption, otherwise be subject to tax. That is, there has been a statutory decision not to tax a certain transaction that is clearly within the ambit and authority of the taxing statutes to tax." Bruce J. Oreck, *Louisiana Sales & Use Taxation* (2d ed.1996), § 3.1. An exclusion, on the other hand, "relates to a transaction that is not taxable because it falls outside the scope of the statute giving rise to the tax, *ab initio.* Transactions excluded from the tax are those which, by the language of the statutes, are defined as beyond the reach of the tax." *Id.* Oreck's definitions have been widely adopted by Louisiana courts.

*Harrah's*, 41 So.3d at 446 (footnote omitted).

Our courts have continued to apply the principle of statutory construction that, "Taxing statutes must be strictly construed against the taxing authority; where a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is to be adopted." *Cleco Evangeline, LLC, v. La. Tax Com'n*, 01-2162, p. 8 (La. 4/3/02), 813 So. 2d 351, 356.

Therefore, the task of the trial court was to apply the law as stated by the legislature and enlightened by the jurisprudence interpreting Louisiana's taxation of goods sold at retail.

5

*Applicable Law*

Louisiana Revised Statutes 47:302(A) states in pertinent part, "There is hereby levied a tax upon the **sale at retail**, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property, as defined herein." (Emphasis added.)

The definition for "sale at retail" is found in La.R.S. 47:301(10)(a)(i), which provides, in pertinent part, "Solely for the purposes of the imposition of the state sales and use tax, "retail sale" or "sale at retail" means a sale to a consumer or to any other person for any purpose **other than for resale as tangible personal property**. (Emphasis added.)

As previously indicated, La.R.S. 47:301(10)(c)(i)(aa), expressly referred to as the "**further processing exclusion**," further clarifies, "The term 'sale at retail' **does not include sale of materials for further processing into articles of tangible personal property for sale at retail**." (Emphasis added.) *Int'l Paper Inc.*, 972 So.2d at 1128.

Under either statute, the ash in this case is clearly a product manufactured for resale as tangible personal property.

The regulations adopted by the Department of Revenue also require that the Tax Collectors give a broad or liberal interpretation in favor of the taxpayer. Louisiana Administrative Code, Title 61, Part I, § 4301 entitled, "Uniform State and Local Sales Tax Definitions**,**" provides under section 4301(A) in pertinent part:

> A. General. Words and phrases shall be read with their context and the specific section of law to which they are applicable. They shall be construed according to the common usage of the language. **Technical words and phrases, and such others as may have acquired a peculiar meaning in the field of taxation shall be construed according to such peculiar meaning**.

(Emphasis added.)

Louisiana Administrative Code, Title 61, Part I, § 4301(C) further provides

under the definition of "*Retail Sale or Sale at Retail*" the following:

> d. **Sales of materials for further processing into articles of tangible personal property for subsequent sale at retail do not constitute retail sales.** This exemption does not cover materials which are used in any process by which tangible personal property is produced, but only those materials which themselves are further processed into tangible personal property. Whether materials are further processed or simply used in the processing activity will depend entirely upon an analysis of the end product. Although any particular materials may be fully used, consumed, absorbed, dissipated, or otherwise completely disappear during processing, if it does not become a recognizable and identifiable component which is of some benefit to the end product, it is not exempt under this provision. The fact that a material remained as a recognizable component of an end product by accident because the cost of removal from the end product was prohibitive or for any other reason, if it does not benefit the property by its presence, it was not material for further processing and the sale is not exempt under this provision.

(Emphasis added.)

Clearly, the ash produced in this case also meets the definition contained in

the regulation, tangible personal property for subsequent sale at retail. *See* La.R.S.

47:301(10)(c)(i)(aa). There is no "primary purpose test" or "economic benefit

test" in either the statute or regulation. The controlling supreme court

jurisprudence requires a liberal interpretation in favor of the taxpayer and

specifically rejects the "primary purpose" test espoused by appellees. *See Int'l*

*Paper*, 972 So.1121; *Harrah's*, 41 So.3d at 438.

In *International Paper,* the supreme court stated that, "'Sale at retail' under

La.R.S. 47:301(10)(a)(i) can take on different meanings, depending upon the

taxing authority involved and/or the product(s) being sold." *Int'l Paper*, 972 So.2d

at 1128. The supreme court then conducted an exhaustive review of the history of

the "further processing exclusion." *See* La.R.S. 47:301(10)(c)(i)(aa). The issue in *International Paper* involved a process called "short sequence bleaching," in which chemicals or raw materials were used to bleach the brown color from pulp in order to produce a lighter color suitable for certain paper production. The chemicals or "Raw Materials" used in the bleaching process were sodium chlorate, hydrogen peroxide, and elemental oxygen. *See Int'l Paper*, 972 So.2d 1121. The Board of Tax Appeals found in favor of International Paper and excluded all of the "Raw Materials" from taxation based on the further processing exclusion, as those "Raw Materials" were used in the eventual production of the lighter colored paper products it sold. The second circuit reversed on appeal, finding that a further test, the "**primary purpose** test" had to be applied. See *Int'l Paper*, 972 So.2d at 1126-27.

The supreme court then reversed the appellate court and held:

> We find that the appellate court correctly determined that the "further processing exclusion" applies to those raw materials becoming recognizable and integral parts of the end products, while at the same time, the raw materials subject to the tax exclusion must be beneficial to the end products. However, our review of the applicable law and jurisprudence does not suggest that the raw materials *themselves i.e.*, the exact chemical/physical compositions of the raw materials) must appear in the end products, **nor does the law suggest that the *primary* purpose for the purchase of these raw materials must be their incorporation into the end products**.

*Id.* at 1133 (emphasis added).

In *International Paper*, the supreme court then concluded that the inclusion of a primary purpose analysis applied by the appellate court was an improper expansion of its prior rulings in *Traigle v. P.P.G. Ind. Inc.*, 332 So.2d 777 (La. 1976) and *Vulcan Foundry, Inc. v. McNamara*, 414 So.2d 1193 (La. 1982):

> To be excluded from the sales and use tax provisions, we also agree that the raw materials must be purchased with the *purpose* of

incorporating said materials into the end products (*i.e.,* the raw materials are "material for further processing"); however, in the instant case, the appellate court found that, to be excluded from taxes, the raw materials must have been purchased for the *primary* purpose of incorporation into the end products.

. . . .

The appellate court appears to have expanded upon our holdings in the aforementioned cases, as neither the *Traigle* Court, nor the *Vulcan* Court, suggested that a "***primary*** purpose" test was required. Rather, both the *Traigle* and *Vulcan* Courts recognized the necessity of a "purpose" test.

. . . .

Accordingly, to be excluded from sales and use tax, we find that the raw materials must have been purchased for the *purpose of incorporation* within the end products, as the raw materials must be ***material for the further processing*** of the final products produced.

*Int'l Paper*, 972 So.2d at 1135 (footnotes omitted) (emphasis in original).

In *International Paper*, the supreme court specifically found that the application of the further processing exclusion **does not** require that "the exact chemical/physical compositions of the raw materials[] must appear in the end products, nor does the law suggest that the *primary* purpose for the purchase of these raw materials must be their incorporation into the end products." *Int'l Paper*, 972 So.2d at 1133. The supreme court in *International Paper* reaffirmed the three-part test from its prior rulings, and specifically rejected the **primary purpose** test utilized by the appellate court in that case in its ruling. *See Int'l Paper*, 972 So.2d 1121.

Notably, the supreme court in *International Paper* specifically used the word "products," plural, in discussing the "further processing exclusion," and stated, "Accordingly, to be excluded from sales and use tax, that the raw materials must have been purchased for the *purpose of incorporation* within the **end products**, as the raw materials must be ***material for the further processing*** of the **final**

9

**products produced**." *Int'l Paper*, 972 So.2d at 1135 (second emphasis added).

NISCO's manufacturing process produces three products, electricity, steam, and

ash, and buys and uses limestone as a necessary component to produce those final

three products.

The supreme court in *Tin, Inc. v. Washington Parish Sheriff's Office*, 12-

2056 (La. 3/19/13), 112 So.3d 197, n. 2 (citations omitted), again applied the three

part test adopted in *International Paper* in connection with the further processing

exclusion referenced in La.R.S. 47: 301(10)(c)(i)(aa), and stated:

> This Court has held that raw materials further processed into end
> products are excluded from this sales and use tax provision if: (1) the
> raw materials become recognizable and identifiable components of the
> **end products**; (2) the raw materials are beneficial to the **end
> products**; and (3) the raw materials are material for further processing,
> and as such, are purchased with the purpose of inclusion in the **end
> products.** *See International Paper, Inc. v. Bridges*, 07-1151
> (La.1/16/08), 972 So.2d 1121, 1136.

(Emphasis added.)

Again, the supreme court used the word **products,** plural. It is clear from

the supreme court's decisions in *International Paper* and *Tin, Inc.*, that products

purchased for sale at retail are deemed to be an *exclusion* from the imposition of

sales taxes. Further, a tax exclusion such as this one at issue is to be "construed

liberally in favor of the taxpayers and against the taxing authority" as found in

Harrah's, 41 So.3d at 446. A tax *exemption*, on the other hand, is "strictly

construed in favor of the State and 'must be clearly and unequivocally and

affirmatively established' by the taxpayer." *Id*. at 446. In this case, we are by

supreme court definition dealing with a tax *exclusion*.

The Tax Collectors also argue that NISCO's cost for the purchase of the

limestone far outweighs the sale of the end product, the ash, on the retail market,

the "economic benefits argument." Therefore, the further processing exclusion, for economic reasons, should not apply to NISCO's purchase of limestone. Though an excellent point, such policy arguments should be presented to the legislature so that the tax **exclusion** provided for by the statute may be narrowed and further defined by that body. In *International Paper*, 972 So.2d at n. 13, the supreme court recognized that the legislative intent was made clear:

> It is interesting to note that during the Legislature's 2007 Regular Session, a Senate Concurrent Resolution was adopted, which resolution addressed the proper interpretation of the "further processing exclusion." Senate Concurrent Resolution No. 136 states, in pertinent part:
>
> WHEREAS, many states do not tax any chemicals or other property required for the manufacturing of property for resale; and
>
> WHEREAS, deviations from the three prong test make the taxability of property required for manufacturing in Louisiana uncertain and undermine the efforts of Louisiana to attract additional investment dollars to the state.
>
> THEREFORE, BE IT RESOLVED that the Legislature of Louisiana does hereby urge and request the secretary of revenue to:
>
> (1) Recognize the interpretation of R.S. 47:301(10)(c) that has been long recognized by Louisiana courts and embrace the three prong test for the non-taxability of further processing materials, to wit: materials are nontaxable materials for further processing if (i) the material or its components become an identifiable component of the product, (ii) the material or its components are beneficial to the end product, and (iii) the presence of the material in the end product is not incidental.
>
> (2) Adopt regulations consistent with such interpretations.
>
> (3) File pleadings consistent with such interpretations in court proceedings concerning the interpretation of R.S. 47:301(10)(c)(i)(aa).

Since the legislative resolution and the supreme court decision in 2008, the legislature has met eight times, including this year, when the legislature was especially active in seeking additional revenue sources. The legislature has not chosen to amend La.R.S. 47:301(10)(c)(i)(aa) to add the **primary purpose** test or

an "economic benefit test," or otherwise narrow the further processing tax **exclusion** in any way. We must apply the further processing exclusion broadly in favor of the taxpayer and against the taxing authorities. The trial court and the majority failed to do so and, in my view, committed legal error as to a matter of statutory interpretation. This court must interpret the statute in accordance with legislative intent and long standing court precedent, recognizing that tax exclusions must be "construed liberally in favor of the taxpayers and against the taxing authority," *Harrah's*, 41 So.3d at 446. A careful reading of La.R.S. 47:301(10)(c)(i)(aa) and La.Admin.Code tit. 61, pt. I, § 4301 reveals that neither the statute nor the Secretary's regulation contain any such restrictions espoused by appellees and approved by the trial court and the majority.

I dissent from the majority's decision to judicially interpret the controlling statute and regulation in such a narrow and restrictive manner contrary to legislative intent and settled supreme court precedent.

## CONCLUSION

I would reverse the June 2, 2014 judgments of the trial court in favor of Cynthia Bridges, Secretary of the Department of Revenue for the State of Louisiana, against Nelson Industrial Steam Company in Docket Nos. 14-1250 and 14-1252.

I would also reverse the trial court's June 2, 2014 judgments in favor of the Calcasieu Parish School System Sales and Use Tax Department, in Docket Nos. 14-1251 and 14-1253 and order the Calcasieu Parish School System Sales and Use Tax Department, as Central Collector of Sales/Use Tax for the Parish of Calcasieu, and Rufus Fruge in his capacity as Administrator of the Calcasieu Parish School

12

System Sales and Use Tax Department, to refund the taxes, penalties, and interest

paid under protest by Nelson Industrial Steam Company in the following amounts:

> District court no. 2010-3564: $911,683.79 tax; $227,921.01 penalty; and $271,162.18 interest through July 12, 2010 (the date of payment under protest), plus accrued legal interest thereon until the date of refund, pursuant to La. R.S. 47:337.63(A)(3).

> District court no. 2013-2661: $1,076,032.73 tax; $269,008.29 penalty and $275,788.58 interest through May 13, 2013 (the date of payment under protest), plus accrued legal interest thereon until the date of refund, pursuant to La. R.S. 47:337.63(A)(3).

Costs on appeal should be assessed to the Calcasieu Parish School System

Sales and Use Tax Department, as Central Collector of Sales/Use Tax for the

Parish of Calcasieu, and Rufus Fruge in his capacity as Administrator of the

Calcasieu Parish School System Sales and Use Tax Department pursuant to La.R.S.

13:5112. Costs on appeal should not be assessed against the Louisiana Department

of Revenue in accordance with La.R.S.13:4521.

.

13